**E-FILED**
Wednesday, 03 August, 2016  06:17:09 PM
Clerk, U.S. District Court, ILCD

**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | |
|---|---|
| BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS,<br>        Plaintiff,<br><br>v.<br><br>MICRON TECHNOLOGY, INC.,<br>        Defendant. | Case No. 2:11-cv-02288-SLD-JEH |

**Order**

Before the Court is Plaintiff, Board of Trustees of the University of Illinois's ("University"), Motion to Compel Deposition Testimony [#109] ("Pltf. Mot."), and the Defendant, Micron Technology, Inc.'s ("Micron") response ("Def. Resp.") thereto [#110]. This Court held a hearing on the motion on August 2, 2016. For the reasons stated, *infra*, the University's motion is GRANTED.

**I[1]**

The University owned three patents that "pertain generally to the use of deuterium in the fabrication of semiconductor devices."  Am. Compl. ¶ 3, ECF No. 37. Micron and the University entered into a contract in 2004 (the Work Agreement), the terms of which called for Micron to supply the University with silicon wafers that the University would treat with its "deuterium anneal" processes (which processes were the subject of the patents-in-suit) and then return to Micron so Micron could study them.  *See* Am. Compl. Ex. D ("work agreement") ¶¶ 1, 2, ECF No. 37-4 at 2.

---

[1] The bulk of the background facts in this section are taken directly from U.S. District Judge Sara L. Darrow's Order denying Micron's motion to dismiss [#92].

1

The University's amended complaint alleges that Micron infringed each of the patents-in-suit and also breached the Work Agreement when Micron manufactured and sold flash devices that "incorporate deuterium with a designed process step." *See* Am. Compl. ¶¶ 13, 25, 29, 33, 38. The Court stayed this case while Micron sought *inter partes* review of the patents before the Patent Trial and Appeal Board ("PTAB").  *See* 35 U.S.C. § 311.  The PTAB found that all three patents were obvious based on prior art, and therefore held them invalid. *See* 35 U.S.C. § 103 (codifying nonobviousness requirement).  The Federal Circuit summarily affirmed the PTAB's decision, effectively knocking out the University's patent infringement claims. Accordingly, all that remains in the case is an Illinois state law claim asserted in Count IV for breach of contract. Am. Compl. ¶¶ 36-39.

The breach of contract claim is premised upon the 2004 Work Agreement executed by the parties.  The contract allowed Micron to "test, inspect, use, disassemble, and analyze the treated Wafers. . . for evaluation purposes only," and could be read to have required Micron to get a license from the University if it sought to make money off the University's "intellectual property." Am. Compl. Ex. D ¶¶ 2(a) and 2(c).  Paragraph 2(c) of the Work Agreement provides, "University represents that it has a proprietary interest in its intellectual property underlying the Deuterium Annealing Process." *Id*. at 2(c). It is this sentence which is central to the dispute now before the Court.

## II

On June 8, 2016, the University served a notice of deposition, requesting to depose Micron on a number of topics pursuant to Federal Rule of Civil Procedure 30(b)(6). Among the topics are several seeking information about Micron's alleged use of deuterium in the manufacture of flash memory devices, as well as other technical and financial information about "Micron's flash

memory devices annealed in a deuterium atmosphere." See Def. Resp. p. 4, ECF No. 110. Micron agreed to provide a corporate representative to testify regarding most of the University's deposition topics, but objected to Topics Nos. 7-10 and 12-14. *See generally*, Pltf. Mot., Ex. A. In its response to the Motion to Compel, Micron withdrew the objection to Topic 13 "in an effort to reduce the number of disputes for the Court to resolve," thereby leaving only Topics Nos. 7-10, 12, and 14 at issue. Def. Resp. p. 1, n. 1.

Specifically, the disputed topics seek to question Micron's witness on the following topics:

Topic No. 7: Micron's decision to anneal flash memory devices in a deuterium atmosphere.

Topic No. 8: Micron's processes for the annealing of flash memory devices in a deuterium atmosphere, including all process recipes therefor.

Topic No. 9: The n-channel field effect transistors contained in Micron's flash memory devices annealed in a deuterium atmosphere.

Topic No. 10: The structure of Micron's flash memory devices annealed in a deuterium atmosphere, including the n-channel field effect transistors, drains, sources and gate insulating and semiconductive layers thereof.

Topic No. 12: The revenues derived by Micron from the sales of flash memory devices annealed in a deuterium atmosphere.

Topic No. 14: Any discussion within Micron of the need to conclude a commercial license with the University as a result of Micron's commercialization of flash memory devices annealed in a deuterium atmosphere.

Pltf. Mot., Ex. A, pp. 12-23.

3

Micron objected to each of these topics with a number of boilerplate objections, as well as one related to the specific facts of this case. Specifically, to each of the disputed topics, Micron made the following objection:

> Micron further objects to this Topic to the extent it seeks information that is clearly outside the scope of the asserted claims of U.S. Patent Nos. 5,872,387, 6,888,204, and 6,444,533—the only intellectual property rights (albeit invalid and unenforceable) owned by the University that the University has identified to date as being relevant to its breach of contract claim, and therefore, this litigation. In particular, with regard to the annealing of flash memory devices using deuterium, Micron interprets the scope of this Topic to be at least limited to annealing after the contacts on the device are formed, as that is the only annealing that is even arguably relevant to any of the University's claims in this litigation. See, e.g., Dkt. No. 83, Ex. 83-3, Final Written Decision of the Patent Trial and Appeal Board, at 6 (construing the broadest reasonable interpretation of the patent claim term "subsequent to completion of fabrication of said device" to be limited to annealing "after the contacts on the device are formed").

Pltf. Mot., Ex. A, pp. 12-23. According to Micron, "because the claims of the University's patents are limited to post-metal annealing, any information about the possible use of deuterium in the manufacture of Micron's products other than for post-metal annealing would be irrelevant to the University's patents." Def. Resp., pp. 5-6. The University, however, argues that Micron seeks to rewrite the scope of the disputed topics as being limited to the University's patents—a proposition which the University asserts has already been rejected by the Court.

### III

The federal discovery rules are to be construed broadly and liberally. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Jefferys v. LRP Publications, Inc.*, 184 F.R.D. 262, 263 (E.D. Pa. 1999). Parties are generally allowed to obtain discovery regarding any nonprivileged matter relevant to the claim or defense of any party,

subject to factors set forth in FRCP 26(b)(1). District courts have broad discretion in matters relating to discovery. See Brown–Bey v. United States, 720 F.2d 467, 470–71 (7th Cir. 1983). For discovery purposes, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.,* 206 FRD 615, 619 (SD Ind 2002), quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)).

The party opposing discovery has the burden of proving that the requested discovery should be disallowed. *Carrigan v. K2M Inc.,* 2011 WL 1790423, *4 (C.D.Ill.), *citing Etienne v. Wolverine Tube,* Inc., 185 F.R.D. 653, 656 (D. Kan. 1999); *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.,* 132 F.R.D. 204, 207 (N.D. Ind. 1990). The objecting party must do more than simply recite boilerplate objections such as overbroad, burdensome, oppressive or irrelevant. *See, for example, Telco Group Inc v. Ameritrade Inc.,* 2006 WL 560635 (D. Neb.); *Roesberg v. Johns–Manville Corp.,* 85 F.R.D. 292, 297 (D. Pa. 1980). If the basis for an objection is lack of relevance, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Chavez,* 206 F.R.D. at 619; *Sheehan v. Kruger,* 2012 WL 6049007 (ND Ind). *See also Methodist Health Services Corp. v. OSF Healthcare Sys.,* 13-1054, 2014 WL 1612838, at *1–2 (C.D. Ill.).

As an initial matter, with the exception of the objection quoted, *supra,* Micron's other objections are all boilerplate, which the Court will not address. *See Telco Group Inc.,* 2006 WL 560635. Indeed, in its response, Micron itself focuses only on the objection really at issue and, consequently, has waived the other boilerplate objections for purposes of consideration by the Court. *See Gray*

*v. Steel Corp.*, 284 F.R.D. 393, 396 (N.D. Ind. Jun. 2012) (objections asserted in responses to interrogatories waived where party did not explain its position in response to a motion to compel). The heart of the discovery dispute here is whether the intellectual property at the center of the breach of contract claim is limited to that intellectual property subject to the now invalidated patents or, instead, to something broader than that solely covered by the patents.

First, looking to the language of the Work Agreement itself, paragraph 2(c) of that agreement defines the scope of the intellectual property at issue. That paragraph states the intellectual property at issue as that which "underl[ies] the Deuterium Annealing Process." Am. Compl. Ex. D ¶2(c). The language of the Work Agreement does not limit the intellectual property to that related to annealing after contacts are formed, aka information only within the scope of the asserted claims of U.S. Patent Nos. 5,872,387, 6,888,204, and 6,444,533.

Second, Judge Darrow's order denying Micron's motion to dismiss the breach of contract claim makes clear that the intellectual property at issue is not limited to that covered by the patents.  Specifically, in denying Micron's motion to dismiss, Judge Darrow stated, "The work agreement seems to acknowledge, intellectual property is a general term that includes more kinds of property interests than only valid patents; at a minimum, copyright, trademark, and trade secrets typically fall under that broad heading." Docket No. 92, at p. 7. Moreover, Judge Darrow states:

> Federal patent law provides a floor of protection for a patentable invention by giving the owner the right to exclude others from its manufacture, use, and sale in the United States for a definite length of time. 35 U.S.C. § 154. Private parties are free to augment that regime as they see fit, as between themselves, provided their agreement does not stymie the policies underlying the patent laws.

*Id.* at 7-8.

6

Finally, she states:

> The Federal Circuit's analysis effectively controls this motion's resolution. The *Studiengesellschaft Kohle* case states in no uncertain terms that a claim in an ultimately invalidated patent can still be infringed in the sense that a licensee remains under a duty to pay royalties up to the date it challenges the patents. In other words, in the context of license enforcement, the Federal Circuit conceptually decouples infringement from a patent's validity, provided the parties do not intend otherwise. Here, the work agreement called for the University to hand over treated wafers to Micron. A reasonable interpretation of the work agreement, however, conditioned that transfer on Micron's promise to seek a license from the University if it ultimately sought to put the University's processes to commercial use. Nothing in the work agreement explicitly makes Micron's obligation contingent on the validity of the University's patents.

*Id.* at 9.

Reading these passages together with paragraph 2(c) of the Work Agreement, this Court can only conclude that the scope of the intellectual property at issue here is not limited to that within the scope of the asserted claims of U.S. Patent Nos. 5,872,387, 6,888,204, and 6,444,533. Rather, the scope of the intellectual property is that as stated in the Work Agreement, *i.e.* intellectual property "underlying the Deuterium Annealing Process." Am. Compl. Ex. D ¶ (c). That language does not limit the intellectual property governed by the Work Agreement only to annealing after contacts are formed. Accordingly, Micron's objections seeking to limit discovery related to intellectual property underlying the Deuterium Annealing Process only after contacts are formed is contrary to the language of the Work Agreement and Judge Darrow's order.[2]

---

[2] The Court acknowledges, as discussed at the hearing on the Motion to Compel, that Micron has filed a Motion to Reconsider Judge Darrow's denial of the motion to dismiss the breach of contract claim. *See* Docket No. 97. Judge Darrow's ruling on that motion could alter the outcome of this Order. However,

**IV**

For the reasons stated, supra, the University's Motion to Compel Deposition Testimony [#109] is GRANTED.

*It is so ordered.*

Entered on August 3, 2016

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE

---

unless and until Judge Darrow decides otherwise when ruling upon the motion to reconsider, Judge Darrow's order on the motion to dismiss and the reasoning contained therein is the law of this case.