UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS,<br><br>Plaintiff,<br><br>v.<br><br>MICRON TECHNOLOGY, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) No. 2:11-cv-2288-SLD-JEH<br>)<br>)<br>)<br>) |

<u>ORDER</u>

Defendant Micron Technology, Inc. ("Micron") moves the Court to either reconsider its March 28, 2016 Order or certify the Order for interlocutory appeal pursuant to 28 U.S.C. 1292(b), ECF No. 97, and the Plaintiff Board of Trustees of the University of Illinois ("University") moves again for injunctive relief, ECF No. 108, and for default judgment, ECF No. 121. Before reaching these motions, the Court must first resolve Micron's Motion to Dismiss for Lack of Subject Matter Jurisdiction. ECF No. 146. For the reasons set forth below, the Court DENIES Micron's Motion to Dismiss for Lack of Subject Matter Jurisdiction, DENIES Micron's Motion for Interlocutory Appeal, and DENIES the University's Renewed Motion for Injunctive Relief.

BACKGROUND

The Court incorporates the factual background from its March 28, 2016 Order as if set forth herein and restates only the salient details. Drs. Joseph W. Lyding and Karl Hess invented a process to use "deuterium in the fabrication of semiconductor devices" that was subsequently protected by three patents. Am. Compl, ¶¶ 3, 5. The inventors assigned their interests in the patents over to the University ("University patents" or "patents"). Am. Compl. ¶ 3, ECF No. 37.

1

In 2004, the University entered into a contract with Micron to treat Micron's wafers with its "deuterium anneal" process and then return them so Micron could study them. Am. Compl. Ex. D ("work agreement") ¶¶ 1, 2, ECF No. 37-4 at 2. The University subsequently concluded Micron had commercialized its intellectual property so on December 5, 2011, the University filed suit against Micron for infringement of its patents and breach of contract.

DISCUSSION

I. Micron's Motion to Dismiss for Lack of Subject Matter Jurisdiction

Nearly six years into the litigation, Micron asserts that the Court never had subject matter jurisdiction because the University failed to name a necessary party as a plaintiff. Specifically, Micron argues Dr. Izik Kizilyalli was a co-inventor of the University patents and according to patent standing law, he had to be named as a plaintiff at the time the University filed suit. Mem. Supp. Mot. Dismiss 1, 19, ECF No. 147. Without standing and the resulting federal subject matter jurisdiction, Micron argues the Court has no supplemental subject matter jurisdiction over the breach of contract claim. *Id.*; *see* 28 U.S.C. § 1367. The University disputes Dr. Kizilyalli was a co-inventor, Opp. Mot. Dismiss 1–2, ECF No. 151, and argues the rationale behind prudential standing is not implicated here because the patents have been invalidated, *Id.* at 2.

The United States Constitution allows federal district courts to adjudicate only cases or controversies. Article III Sec. 2, cl. 1. A case or controversy exists if a plaintiff can allege an actual injury caused by the defendant that is capable of redress. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Allegations sufficient to support these elements constitute constitutional standing and permit the court to exercise jurisdiction. In a patent case, constitutional standing exists "when a party infringes a patent in violation of [another] party's exclusionary rights." *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1292 (Fed. Cir. 2016).

In its complaint, the University identified Joseph W. Lyding and Karl Hess as the named inventors on the University patents, who then assigned their interests over to the Board of Trustees of the University of Illinois. "There is a presumption that [a patent's] named inventors are the true and only inventors." *Drone Techs., Inc.*, 838 F.3d at 1292 (quotation marks omitted). The University had constitutional standing on the day it filed suit because it was the undisputed owner by assignment of the University patents and it alleged Micron's patent infringement caused it irreparable injury.

Prudential standing requirements are intended to prohibit plaintiffs from raising claims on behalf of absent third parties or raising generalized grievances, or from suing if the plaintiff is outside the group intended to benefit from a particular statute. *Lexmark Intern., Inc. v. Static Control Components, Inc*., 134 S. Ct. 1377, 1386 (2014). In patent infringement cases, courts advance these policies by requiring a patent co-owner to add all other co-owners or risk dismissal of the suit. *STC.UNM v. Intel Corp.*, 754 F.3d 940, 944, 947 (Fed. Cir. 2014) (discussing policy concerns that "underpin the court's joinder requirement for patent owners"); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000) (characterizing joinder rule as "prudential rather than constitutional in nature"); *Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1264–65 (Fed. Cir. 2007) ("Absent the voluntary joinder of all co-owners of a patent, a co-owner acting alone will lack standing."). Owners are the inventors of the patented process or those who have been assigned a patent owner's interest. *Banks v. Unisys Corp*., 228 F.3d 1357, 1359 (Fed. Cir. 2000) ("The general rule is that an individual owns the patent rights to the subject matter of which he is an inventor . . . ."); 35 U.S.C. § 261 (allowing patents to be assigned).

Here, since the University was the assigned owner of the patent and was named as the plaintiff, no standing issue existed on the face of the complaint. However, a patent can be corrected to reflect co-inventorship. 35 U.S.C. § 256(b) ("The court before which [the omission of inventors] is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly."); *see Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998) (adding co-inventor pursuant to a § 256 motion); *Speedfit LLC v. Woodway USA, Inc.*, No. 13-CV-1276, --- F.Supp.3d ---, 2016 WL 7471307, *3, 5 (E.D. NY. Dec. 28, 2016) (same). When multiple inventors are listed on a patent, each co-owner "presumptively owns a pro rata undivided interest in the entire patent," *Ethicon,* 135 F.3d at 1460, and would have to be added to an infringement suit. *STC.UNM*, 754 F.3d at 944. A situation could arise where one co-inventor assigns his pro-rata share to another party who, when he seeks to sue, needs to add the co-inventors who did not assign their shares. If these co-inventors were not listed on the face of the patent, then a standing issue could exist that was not evident on the face of the pleadings. A successful § 256 motion would then have the effect of requiring joiner of the newly named co-inventor, and destroying standing if joinder was not effected.

Micron argues Dr. Kizilyalli should be added as an inventor on the University's Patents, but no § 256 motion to add Dr. Kizilyalli has been filed. Only a patentee or an inventor with constitutional standing may initiate the § 256 reclassification process.[1] To have standing to

---

[1] Historically, a party could assert a patent's invalidity under § 102(f) due to the failure to identify a co-inventor in the patent. 35 U.S.C. § 102(f). First, a court would have to determine if there was "clear and convincing proof that the alleged unnamed inventor was in fact a co-inventor. [Then] a patentee [could] invoke section 256 to save the patent from invalidity." *Pannu v. Iolab Corp*., 155 F.3d 1344, 1350 (Fed. Cir. 1998). Section 102(f) has been eliminated from the statutory scheme, but the defense is presumably still available under § 101, which allows patents to only be provided to "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter . . . ." 35 U.S.C. § 101. Here, Micron seeks to add a co-inventor rather than invalidate the patents.

correct inventorship under § 256, a party must show that he "suffered an injury-in-fact, that the injury is traceable to the conduct complained of, and that the injury is redressable by a favorable decision." *Shukh v. Seagate Technology*, 803 F.3d 659 (Fed. Cir. 2015) (citing *Chou v. Univ. of Chicago*, 254 F.3d 1347, 1357 (Fed. Cir. 2001)).

The Federal Circuit recently decided a factually similar case.[2] In *Drone Technologies, Inc. v. Parrot S.A.*, the infringing party moved to dismiss the complaint for lack of subject matter jurisdiction because the named inventor who assigned the patents to the plaintiff was not the true inventor and the assignee did not have standing to sue for infringement. *Drone*, 838 F.3d at 1288. The Federal Circuit held that the district court was not obligated to consider inventorship when it assessed whether the plaintiff had standing to sue because the "district court never granted (or even considered) a § 256 motion, so the court was not presented with a newly established inventorship when [the infringing party] moved to dismiss based on [the assignee's] alleged lack of standing." *Id*. at 1294. The court held that without a § 256 correction, the infringing party had not provided a persuasive reason for rejecting the "presumption that [a patent's] named inventors are the true and only inventors," *id*. at 1292 (quotation marks omitted), and the court was "not compel[led to] consider[] inventorship in determining standing." *Id*. at 1294.

No motion under § 256 has been filed (and even if it had been, there are no valid patents to correct), so there is no need to address Micron's inventorship challenge.[3] Accordingly, the Court continues to evaluate the patents in the state they existed at the beginning of this lawsuit.

---

[2] Oddly, neither party cites 35 U.S.C. § 256 or *Drone Technologies, Inc.*.
[3] The concerns underlying the all co-owners requirement, such as each co-owner's ability to license a third party without consent of the co-owners, a co-owner's "right to not be thrust into costly litigation where [a] patent is subject to potential invalidation," and an accused infringer's interest in avoiding multiple infringement suits on the same patent, are no longer present in this case because the patents have been invalidated. *See STC.UNM*, 754 F.3d at 947.

The University's patents listed Drs. Lyding and Hess as the inventors, who then assigned their interests over to the University. Am. Compl. ¶¶ 4, 5. Micron has not argued the University's assignment is lacking in any way; therefore, the University had prudential and statutory standing, § 281 ("A patentee shall have remedy by civil action for infringement of his patent."), by virtue of its status as the sole patentee (§ 101(d) defines patentee to include successor in title). The Court had original jurisdiction pursuant to 28 U.S.C. § 1338 to adjudicate the University's patent infringement claim and has supplemental jurisdiction over the University's breach of contract claim. As this is Micron's only challenge to the University's standing, Micron's motion to dismiss for lack of subject matter jurisdiction, ECF No. 146, is DENIED. Micron's Motion for Leave to File Reply In Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 152, is GRANTED

    II.    Micron's Motion for Leave to File Under Seal Certain Documents in Support of Micron's Motion to Dismiss for Lack of Subject Matter Jurisdiction

Micron moves to seal its Memorandum in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 147, and attached exhibits 2, 3, and 15, ECF Nos. 147-1, 147-2, 147-3. In general, litigants' privacy interests must be weighed against the public's interest in having a transparent judicial system. The interest of the public "does not always trump the property and privacy interests of the litigants, but it can be overridden only . . . if there is good cause . . . ." *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). At the discovery stage, for example, that balancing of interests is reflected in Rule 26(c)(1)(G): "The court may, for good cause, issue an order to protect a party . . . [by] requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). But, when a court finds it necessary to consider certain information in making a decision, that

information should ordinarily be made available to public scrutiny in order to preserve the integrity of the judicial process. *See, e.g., Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002); *see also Union Oil Co. of Calif. v. Leavell*, 220 F.3d 562, at 568 (7th Cir. 2000) ("Judges deliberate in private but issue public decisions after public arguments based on public records. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification."). Therefore, "those documents, usually a small subset of all discovery, that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter*, 297 F.3d at 545.

Here, Micron seeks to seal the memorandum because it "heavily relies on and extensively quotes from . . . documents" that have been designated as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS EYES ONLY." Mot. Leave Seal 1, ECF No. 145. The Court has not relied on any portion of the memorandum or attached exhibits related to Micron's attempt to challenge the inventorship of the University's patents. Accordingly, Micron's Motion to Seal, ECF No. 145, is DENIED; the memorandum and exhibits 2, 3, and 15 may remain sealed. Micron is instructed to file a redacted copy of the memorandum omitting pages 3–6, 9–18, by April 11, 2017.

III. Motion to Reconsider the Court's Order Denying Micron's Motion to Dismiss the University's Breach of Contract Claim or Certify for Interlocutory Appeal

In its amended complaint, the University alleges that Micron breached the work agreement when it manufactured and sold flash devices that "incorporate[d] deuterium with a designed process step" without entering into a license agreement with the University. *See* Am. Compl. ¶¶ 12, 13, 25, 29, 33, 37, 38. The University filed suit for infringement and breach of

7

contract. Shortly thereafter, Micron successfully challenged the University patents' validity before the Patent Trial and Appeal Board ("PTAB"), which the Federal Circuit summarily affirmed on March 12, 2015. With no valid patents remaining, the parties petitioned the Court to enter a Rule 54(b) judgment on the infringement counts, leaving only the University's breach of contract claim. July 24, 2015 Text Order.

On July 28, 2015, Micron filed a motion to dismiss the University's breach of contract claim as insufficient as a matter of law because the work agreement's liability-limiting provision meant the University could not plead damages flowing from any alleged breach of the work agreement once the patents were invalidated and the infringement claims were extinguished.[4] *See* Mem. Supp. Mot. Dismiss 8–9, ECF No. 89. The Court, relying on *Studiengesellschaft Kohle, m.b.H. v. Shell Oil Co.*, 112 F.3d 1561 (Fed. Cir. 1997), held that the University could allege a breach of contract claim when Micron commercialized the University's intellectual property, which was protected by then-valid patents, without first entering into a separate license agreement as required by the work agreement even though the patents were later invalidated. The Court compared the licensee's duty to pay royalties up to the date it challenged the patents with Micron's alleged obligation to enter a separate license agreement up to the date it

---

[4] The University attached a copy of the work agreement to the amended complaint and the contract is thus a part of the pleadings for all purposes. Fed. R. Civ. P. 10(c); *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice."). The pertinent clauses of the work agreement are as follows: "[Micron] shall be permitted to test, inspect, use, disassemble, and analyze the treated Wafers as determined by [Micron] for evaluation purposes only." Work Agreement ¶ 2(a). "If [Micron] wishes to license for commercial use by [Micron] such intellectual property owned by University, then the requisite licenses for such intellectual property from University would be granted to [Micron] pursuant to a separate written license agreement to be negotiated in good faith between the parties containing such reasonable terms and conditions as mutually agreed to between the parties hereto." *Id*. at ¶ 2(c). "Except with respect to breaches of confidentiality obligations provided for herein, or infringement of the other party's intellectual property rights, in no event shall either party hereto, or its employees or agents, be liable for any loss, claim, damage (whether direct, indirect, incidental, consequential, exemplary, punitive, special or otherwise), or liability, of whatsoever kind of nature, which may arise from or in connection with this Agreement." *Id*. at ¶ 6.

8

challenged the patents.[5]   March 28, 2016 Order at 9.  Micron has now filed a motion asking the Court to reconsider its decision to apply *Studiengesellschaft* to the facts of this case.

Under Rule 54(b), an order adjudicating "fewer than all the claims or rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Courts have the inherent power to reconsider non-final orders, as justice requires, before entry of judgment. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983); *Sims v. EGA Prods., Inc.*, 475 F.3d 865, 870 (7th Cir. 2007).  Motions to reconsider interlocutory orders "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). "A manifest error is not demonstrated by the disappointment of the losing party.  It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal citations omitted).  Because the standards for reconsideration are exacting, the Seventh Circuit has stressed that appropriate issues for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

Micron makes one argument in its motion to reconsider:  the Court's application of *Studiengesellschaft* to this case incorrectly extended the holding because the principles supporting that decision are absent here.  Mem. Supp. Mot. Recons. 1, ECF No. 97-1.  In *Studiengesellschaft*, the Federal Circuit balanced the licensee's obligation to pay royalties in exchange for the right to use a patent and be thereafter "insulated from unlicensed competition

---

[5] Therefore, the window for possible damages is from the date of the alleged commercialization to the date the patents were challenged.

9

[and] investigations of infringement" with the policy that encouraged patent challenges as early as possible to increase "the full and free use of ideas in the public domain." *Id*. at 1568. The court held that a licensee is liable for unpaid royalties until it provides notice that the reason it has ceased making payments "is because it has deemed the relevant claims to be invalid." *Id*. Here, Micron alleges the work agreement was not a license agreement, meaning Micron never received the benefit of immunity from an infringement suit and never agreed to make royalty payments to the University. Mem. Supp. Mot. Recons. at 10–11. Without a requirement to pay royalties, Micron would not have had any incentive to challenge the patents' validity.

The University opposes the motion and contends the work agreement was a limited license, permitting Micron to use the University's intellectual property, and that Micron should have been incentivized to challenge the patents pursuant to its obligation to enter a separate license agreement in advance of commercialization. Resp. Mot. Recons. 4, ECF No. 98.

Micron has not provided a persuasive basis for the Court to reconsider its decision. It cites only cases that have applied *Studiengesellschaft* to royalty-based licenses, but that misses the point—the Court applied *Studiengesellschaft* to the work agreement because it is analogous to a license for royalties and the policy considerations for enforcing it are the same. To beat a dead horse:

> The Federal Circuit's analysis effectively controls this motion's resolution. The *Studiengesellschaft Kohle* case states in no uncertain terms that a claim in an ultimately invalidated patent can still be infringed in the sense that a licensee remains under a duty to pay royalties up to the date it challenges the patents. In other words, in the context of license enforcement, the Federal Circuit conceptually decouples infringement from a patent's validity, provided the parties do not intend otherwise. Here, the work agreement called for the University to hand over treated wafers to Micron. A reasonable interpretation of the work agreement, however, conditioned that transfer on Micron's promise to seek a license from the University if it ultimately sought to put the University's processes to commercial use. Nothing in the work agreement explicitly makes Micron's obligation contingent on the validity of the University's patents.

> Accordingly, Micron's alleged commercial use of the University's processes was related to infringement, and the breach of contract claim therefore falls within the relevant carve-out to the work agreement's liability limiting provision.

March 28, 2016 Order at 9. Micron has certainly not cited any cases refusing to apply *Studiengesellschaft* to similar facts. The Court declines to reconsider its decision.

In the alternative, Micron requests the Court certify the Order for interlocutory appeal. 28 U.S.C. § 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

Four criteria must be met for a court to certify an issue for interlocutory appeal. There must be (1) a question of law that is (2) controlling, (3) contestable, and (4) whose resolution would speed up the litigation. *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000).

Micron proposes the following question of law: Whether, under *Studiengesellschaft*, a party that has never entered into a patent license agreement requiring royalty payments for commercial use of a patent may nevertheless be liable under a breach of contract theory for undetermined royalties based on that party's alleged infringement of the patent, which has been invalidated. Mem. Supp. Mot. Recons. 13–14.

While Micron posits that the issue can be reduced to a discrete question of law, it is not quite correct. The parties disagree about the facts of the case, specifically the meaning of the work agreement. *See* Motion for Summary Judgment, ECF No. 155-2. As a result, the Seventh

11

Circuit would have to review the allegations of the amended complaint and the work agreement to determine if it agreed with this Court's assessment that the University alleged a plausible cause of action before it could assess *Studiengesellschaft's* impact. Such an in-depth analysis is not appropriate for an interlocutory appeal. *See In re Text Message Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010) ("[I]f a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case.").

Because not all of the criteria are met, the Court declines to certify the Order for interlocutory appeal. Micron's Motion to Reconsider or Certify the Order for Interlocutory Appeal, ECF No. 97, is DENIED. Micron's Motion for Leave to File Reply to the University's Opposition to Micron's Request for Reconsideration, ECF No. 99, is GRANTED.

IV. University's Renewed Motion for Injunctive Relief

The University next filed a renewed motion for injunctive relief, ECF No. 108, citing a recent letter sent by Micron's counsel to the University's counsel intended "to force the University into submission via extra-judicial means." Ren. Mot. Inj. Relief, ECF No. 108. Micron's letter states its intent "to put the University on clear notice of its exposure to 'exceptional case' fees under 35 U.S.C. § 285." Ren. Mot. Inj. Relief, Ex. A, ECF No. 108-2 (quoting statute). Micron argues the motion for injunctive relief should be denied for four reasons: (1) it does not provide a legal basis to support its request for injunctive relief; (2) the letter is protected free speech; (3) there are insufficient facts supporting a claim of injunctive relief; and (4) the request is impermissibly vague.

The University's renewed motion for injunctive relief is denied because it does not provide a legal basis for its motion.

> Every motion raising a question of law (except summary judgment motions, which are governed by Subparagraph (D) of this Rule) must include a memorandum of law including a brief statement of the specific points or propositions of law and supporting authorities upon which the moving party relies, and identifying the Rule under which the motion is filed.

L.R. 7.1(B)(1). Further, the letter states only that it disagrees with the University's position, which it characterizes as baseless and ill-advised, and its intent to pursue attorney fees under the statute. 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). The Court imagines similar letters are regularly presented during patent litigation and sees no reason for characterizing this letter as an "intimidation tactic." The University's Renewed Motion for Injunctive Relief, ECF No. 108, is DENIED.

V. Micron's Motion for Leave to Supplement with New Evidence its Motion for Reconsideration or Alternative Request for Certification for Interlocutory Appeal

Micron's Motion for Leave to Supplement with New Evidence its Motion for Reconsideration, ECF No. 136, rests on evidence "that the University has taken positions in opposition to Micron's Motion to Dismiss, as well as in opposition to Micron's Motion for Reconsideration, that are unwarranted and inconsistent with the University's actual position." Micron utterly fails to explain why such *evidence* would be relevant to the Court's reconsideration of its decision on a *motion to dismiss*. The "new evidence" is the University's earlier assessment of its claim in comparison to its claim on an unrelated contract is completely irrelevant to whether the University has alleged a breach of contract claim. Similarly irrelevant at this stage are the parties' previous drafts of the work agreement. Micron's Motion for Leave to Supplement with New Evidence, ECF No. 136, is DENIED. Micron's Motion for Leave to File Document under Seal in Support of its Motion for Leave to Supplement with New Evidence, ECF No. 135, is DENIED because the Court has not relied on any information provided in ECF No. 136. The Motion for Leave to Supplement will remain sealed.

VI. The University's Motion for Default Judgment

The University argues Micron's second amended answer is untimely and requests the Court find Micron in default. Rule 55(a) (allowing entry of default when a party fails to "plead or otherwise defend[.]") As is evident from the docket, Micron has vigorously defended this claim for nearly six years. The Court will not resolve this case on a technicality, especially when the University has not alleged prejudice. *Sun v. Bd. of Trustees of Univ. of IL*, 473 F.3d 799, 811 (7th Cir. 2007) ("This Circuit has a well-established policy favoring a trial on the merits over a default judgment. For that reason, a default judgment should be used only in extreme situations, or when other less drastic sanctions have proven unavailing."). The University's Motion for Default Judgment, ECF No. 121, is DENIED.

CONCLUSION

For the reasons stated above, Micron's Motion to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 146, is DENIED. Micron's Motion for Leave to File Reply In Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 152, is GRANTED. Micron's Motion for Leave to File Document under Seal, ECF No. 145, is DENIED. Micron is directed to file the redacted Memorandum in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction by April 11, 2017. Micron's Motion to Reconsider or Certify for Interlocutory Appeal, ECF No. 97, is DENIED. Micron's Motion for Leave to File Reply to the University's Opposition to Micron's Request for Reconsideration, ECF No. 99, is GRANTED. The University's Renewed Motion for Injunctive Relief, ECF No. 108, is DENIED. Micron's Motion for Leave to File Document Under Seal in Support of its Motion for Leave to Supplement with New Evidence, ECF No. 135, is DENIED. The University's Motion for Default Judgment, ECF No. 121, is DENIED.

Entered: <u>March 28, 2017</u>.

_____
s/ Sara Darrow  
SARA DARROW  
UNITED STATES DISTRICT JUDGE